UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | 15 C 7177 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| EDWARD WINSTEAD, BRIAN LUTZOW, ROBERT GARZA, JAMES LAS COLA, DAVE EVANS, and CHESTER BACH, | ) ) ) ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

In this suit under 42 U.S.C. § 1983 and Illinois law, Anthony Johnson brings claims arising from his prosecution and two convictions—both reversed on appeal—for the murder of Brandon Baity. After filing suit in August 2015, Doc. 1, Johnson was granted leave to file a first amended complaint, Docs. 24-25. The court dismissed with prejudice Johnson's federal claims—the Fourth Amendment false arrest claim and *Miranda* claim on statute of limitations grounds, and the *Brady* claim for failure to allege the suppression of material exculpatory information—and relinquished its supplemental jurisdiction over his state law claims. Docs. 50-52 (Der-Yeghiayan, J.) (reported at 2016 WL 2937446 (N.D. Ill. May 20, 2016)).

Johnson appealed the dismissal of only his *Miranda* claim. 2016 WL 8540188 (7th Cir. 2016) (Johnson's opening appeal brief). The Seventh Circuit reversed in part, holding that the *Miranda* claim arising from Johnson's second trial was timely, and remanded for further proceedings. 900 F.3d 428 (7th Cir. 2018). As a result of the Seventh Circuit's decision and Johnson's settlement with some defendants, what remains of the amended complaint are a state law malicious prosecution claim against Chicago police officers Brian Lutzow, Robert Garza,

James Las Cola, Chester Bach, Dave Evans, and Edward Winstead, and a *Miranda* claim against Winstead and Las Cola.

On remand, the case was reassigned to the undersigned judge's calendar, Doc. 63, and the parties asked to put the case on hold pending resolution of their cross-petitions for certiorari, Docs. 65, 68, 70, 73. After the cross-petitions were denied, Johnson moved for leave to file a second amended complaint to add a due process evidence fabrication claim and factual allegations pertinent to the malicious prosecution claim, Doc. 80, and Defendants moved to dismiss the *Miranda* and malicious prosecution claims, Doc. 88. The court in an oral ruling granted Johnson's motion to add factual allegations for the malicious prosecution claim, Doc. 84, and now denies Johnson's motion to add the evidence fabrication claim and denies Defendants' motion to dismiss.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Johnson's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Johnson as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth the facts at the pleading stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

Baity was killed on October 1, 2003. Doc. 80-1 at ¶ 11. On December 4, 2003, Chicago police officers took Johnson, then seventeen years old, into custody. *Id*. at ¶ 17. At various points on December 5, 2003, Las Cola and Winstead interrogated Johnson without providing *Miranda* warnings, and Johnson gave unwarned statements that were later used against him at trial. *Id*. at ¶¶ 19-23. Johnson was released, *id*. at ¶¶ 26-27, and was taken back into custody on different charges on January 17, 2004, *id*. at ¶ 28.

In the meantime, on December 5, 2003, Garza arrested non-party Nolan Swain without probable cause, and Winstead interrogated him about Baity's murder. *Id*. at ¶ 29. Swain was rearrested on May 7, 2004 as part of a drug sting. *Id*. at ¶ 30. Officers acting in concert with Bach, Evans, Lutzow, Las Cola, and Winstead beat and coerced Swain into signing a written statement implicating Johnson in the Baity murder. *Ibid*. Lutzow, Evans, Bach, and the officers who beat Swain promised him leniency on the drug charges if he implicated Johnson. *Id*. at ¶ 32. Bach, Evans, Lutzow, Las Cola, and Winstead were aware of Swain's mistreatment and that he had falsely implicated Johnson. *Id*. at ¶ 31. The next day, Cook County Assistant State's Attorney Andreana Ann Turano Michiels interviewed Swain and promised him leniency if he implicated Johnson. *Id*. at ¶ 33.

Also on May 7, 2004, Rufus Johnson ("Rufus," to avoid confusion) was arrested in a drug sweep. *Id*. at ¶ 34. Two unnamed detectives, in the presence of Cook County Assistant State's Attorney Kevin Hughes, who was acting in concert with Bach, Evans, Lutzow, Las Cola, and Winstead, told Rufus that he could "help" himself by implicating Johnson. *Id*. at ¶¶ 35-36. Rufus was transferred to another police station and met with ASA Turano Michiels, who told him that he had no choice but to implicate Johnson, which he did in a written statement. *Id*. at

3

¶¶ 38-39. Rufus later implicated Johnson in grand jury testimony and accepted a plea deal for the drug charge. *Id*. at ¶¶ 42-43.

Later in May 2004, Winstead and Las Cola took Johnson from jail to the police station to ask him about Baity's murder, but Johnson refused to engage. *Id*. at ¶¶ 44-47. With Las Cola present, Winstead told Johnson that he would make sure Johnson was charged. *Id*. at ¶¶ 48-49. Winstead and Las Cola then fabricated police reports implicating Johnson in the murder. *Id*. at ¶ 50. In concert with Garza, Bach, and Evans, Winstead and Las Cola then persuaded Cook County State's Attorney officials to bring false murder charges against Johnson. *Id*. at ¶¶ 51-52.

At Johnson's first trial, Lutzow, Garza, Las Cola, Bach, Evans, and Winstead provided false inculpatory testimony and the jury convicted him of murder. *Id*. at ¶¶ 12, 53. The Appellate Court of Illinois reversed the conviction and remanded. *People v. Johnson*, No. 1-08-0233, 1 N.E.3d 119 (Ill. App. 2010) (unpublished table decision) (reproduced at Doc. 88-2).

About a year after the reversal, on September 4, 2011, Las Cola and Winstead again interrogated Johnson without giving him *Miranda* warnings. Doc. 80-1 at ¶¶ 57, 64. At his second trial, Johnson's unwarned statements were introduced through Winstead's and Las Cola's testimony, and those two officers, Lutzow, Garza, Bach, and Evans testified falsely against him. *Id*. at ¶¶ 54, 59, 66. The jury again convicted Johnson of murder. *Id*. at ¶ 14. The state appellate court reversed the conviction on the ground that Johnson had not been proved guilty beyond a reasonable doubt. *People v. Johnson*, 23 N.E.3d 1216 (Ill. App. 2014).

## Discussion

I. **Defendants' Motion to Dismiss**

    A.    *Miranda* **Claim**

Defendants seek dismissal of the *Miranda* claim—which, as noted, is brought against only Winstead and Las Cola—on the ground that "[m]oney damages are not available in a

4

Section 1983 civil case for the use of a plaintiff's unwarned, non-coerced statement in a criminal case." Doc. 88 at 11. That argument is defeated by *Sornberger v. City of Knoxville*, 434 F.3d 1006 (7th Cir. 2006), which held that "[t]he use [in a criminal case] of [the plaintiff's] confession, if the confession is indeed found to have been elicited without *Miranda* warnings, allows a suit for damages under § 1983." *Id*. at 1027. As Defendants observe, Doc. 88 at 12, the plaintiff in *Sornberger* had also been threatened and denied the right to counsel, but the above-quoted passage from *Sornberger* plainly holds that the use at trial of an unwarned, uncoerced confession, standing alone, supports a § 1983 damages claim. The Seventh Circuit recently reaffirmed the point in *Martin v. Marinez*, 934 F.3d 594 (7th Cir. 2019), which explained that its decision in Johnson's appeal (!) "specifies that an actual Fifth Amendment violation occurs only when the information acquired without *Miranda* warnings is introduced at trial to secure a criminal conviction" and that "[t]he damages [the decision in Johnson's appeal] contemplates would be those arising from incarceration for the actual Fifth Amendment violation of admitting the statements at trial to secure a criminal conviction, not[] … for violation of a prophylactic rule." *Id*. at 600 n.2.

Defendants are wrong to argue that *Chavez v. Martinez*, 538 U.S. 760 (2003), requires the contrary result. The Seventh Circuit in *Sornberger* interpreted *Chavez* to hold that a "violation of the *Miranda* safeguards cannot provide the basis for § 1983 liability without use of a suspect's statements against him in a 'criminal case.'" 434 F.3d at 1024-25. Here, as Defendants recognize, Doc. 88 at 12-13, Johnson alleges that his unwarned statements were used against him in a criminal trial that led to his conviction, Doc. 80-1 at ¶¶ 59, 66, so *Chavez* does not foreclose his *Miranda* claim.

Defendants next attempt to invoke testimonial immunity. Citing *Rehberg v. Paulk*, 566 U.S. 356 (2012), for the proposition that they are shielded by "absolute immunity with respect to *any* claim based on [a] witness' testimony," *id*. at 367, Defendants argue that Johnson's *Miranda* claim should be dismissed because it rests "on the allegations that [his] unwarned statements were introduced against him through the testimony of Winstead and Las Cola." Doc. 88 at 13-14. This argument, if accepted, would lead to a most perverse result: If Officer A elicited a confession in violation of *Miranda* and Officer B testified to the confession at trial, then the criminal-defendant-turned-civil-plaintiff would have a *Miranda* claim against Officer A, but if Officer A both elicited the confession *and* testified to it a trial, then absolute immunity would protect Officer A from liability under *Miranda*.

That is not the law. In *Avery v. City of Milwaukee*, 847 F.3d 433 (7th Cir. 2017), the defendant police officers fabricated the plaintiff's confession and then testified to the confession at the plaintiff's criminal trial. *Id*. at 436-37. Like Defendants here, the officers argued that because they introduced the fabricated confession at trial through their testimony, they were immune from liability on the evidence fabrication claim because "witnesses at a criminal trial cannot be sued for damages flowing from their testimony." *Id*. at 441. The Seventh Circuit disagreed:

> Here, the detectives testified about [the plaintiff's] "confession" and authenticated their false reports memorializing it; the reports were then introduced into the trial record. If an officer who fabricates evidence can immunize himself from liability by authenticating falsified documentary or physical evidence and then repeating the false "facts" in his trial testimony, wrongful-conviction claims premised on evidence fabrication would be a dead letter. …
>
> \* \* \*
>
> When the detectives falsified their reports of a nonexistent confession, it was entirely foreseeable that this fabricated "evidence" would be used to convict [the plaintiff] at trial for [the] murder. That was, of course, the

6

> whole point of concocting the confession. … The detectives are liable under
> § 1983 for this due-process violation even though their trial testimony,
> standing alone, would not subject them to damages liability.

*Id*. at 441-43. The same rationale defeats Defendants' invocation of testimonial immunity as to Johnson's *Miranda* claim.

Finally, Defendants contend that Winstead and Las Cola are protected by qualified immunity because, given the state trial judge's denial of Johnson's motion to suppress his *Miranda*-violative statements, they had "no reason to believe they should not testify about [the] statements." Doc. 88 at 15. Qualified immunity is inappropriate here. As an initial matter, "[b]ecause a qualified immunity defense so closely depends on the facts of the case, a complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds." *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018) (internal quotation marks omitted); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1090 (7th Cir. 2008) ("[W]e have cautioned that the rule that qualified immunity must be resolved at the earliest possible stage must be tempered by the notice pleading requirements of Rule 8.") (citations omitted). Moreover, Johnson's theory of *Miranda* liability rests not on Defendants' trial testimony, but on their prior taking of unwarned custodial statements from Johnson. To be sure, and as discussed above, the statements had to be used in Johnson's criminal case to subject Winstead and Las Cola to § 1983 liability, but that it was the interrogating officers who testified does not shield them from liability. Finally, Winstead and Las Cola of course did not know how the state judge would rule when they violated *Miranda* while questioning Johnson.

### B. Malicious Prosecution Claim

"To state a cause of action for the tort of malicious prosecution, the plaintiff must prove five elements: (1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff;

7

(3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Beaman v. Freesmeyer*, 131 N.E.3d 488, 495 (Ill. 2019) (internal quotation marks omitted). Defendants focus on the first element, arguing that Johnson does not allege that they, as police officers and not prosecutors, engaged in the commencement or continuance of his prosecution. Doc. 88 at 16.

Earlier this year in *Beaman*, the Supreme Court of Illinois held that "the relevant inquiry" in evaluating the first element "is whether the officer proximately caused the commencement or continuance of the criminal proceeding." 131 N.E.3d at 496. As *Beaman* explained, "a person can be liable for commencing or continuing a malicious prosecution even if that person does not ultimately wield prosecutorial power or actively deceive prosecutors," as liability "extends to all persons who played a significant role in causing the prosecution of the plaintiff, provided all of the elements of the tort are present." *Id*. at 499 (internal quotation marks omitted). *Beaman* added that "liability for malicious prosecution calls for a commonsense assessment of those persons who played a significant role in the criminal case[, which] … necessarily includes those persons whose participation in the criminal case was so active and positive to amount to advice and co-operation or those persons who improperly exerted pressure on the prosecutor, knowingly provided misinformation to him or her, concealed exculpatory evidence, or otherwise engaged in wrongful or bad-faith conduct instrumental in the initiation of the prosecution." *Id*. at 500 (citations and internal quotation marks omitted).

Johnson alleges that Garza arrested him and Swain without probable cause, Doc. 80-1 at ¶¶ 29, 101; acted in concert with Winstead and Las Cola in "persuad[ing] officials in the Cook County State[']s Attorney's office to bring false charges against" him, *id*. at ¶ 51; and testified falsely at trial, *id*. at ¶¶ 53-54. Given Garza's role in persuading the prosecution to bring charges

and in presenting false statements, Johnson alleges facts sufficient to allow the reasonable inference that Garza commenced or continued the criminal proceeding against him. *See Rosado v. Mora*, 2019 WL 4450523, at *6 (N.D. Ill. Sept. 17, 2019) (applying *Beaman* in denying summary judgment to the defendant officers where the plaintiff claimed that they "participated in the chain of events that led to [the plaintiff's] revocation proceedings").

Bach, Evans, and Lutzow are alleged to have acted in concert with the officers who beat Swain, Doc. 80-1 at ¶ 30; been aware of Swain's mistreatment and false statement implicating Johnson, *id*. at ¶ 31; acted in concert with ASA Hughes to convince Rufus to falsely implicate Johnson, *id*. at ¶ 36; "obtain[ed] the false statements of … Swain and Rufus," *id*. at ¶¶ 110, 119, 128; and testified falsely at trial, *id*. at ¶¶ 53-54. Additionally, Bach and Evans are alleged to have acted in concert with Winstead and Las Cola in persuading State's Attorney officials to bring false charges against Johnson. *Id*. at ¶ 51. Given the reasonable inference that the misinformation they elicited and knowingly provided to prosecutors would have informed the prosecutors' bringing and continuing the prosecution, Johnson has alleged facts sufficient to allow the inference that Bach, Evans, and Lutzow commenced or continued the criminal proceeding against him. *See Rosado*, 2019 WL 4450523, at *6.

Winstead and Las Cola are alleged to have played even more central roles: holding Johnson in custody without probable cause, Doc. 80-1 at ¶¶ 19, 21; interrogating him without *Miranda* warnings, *id*. at ¶¶ 20, 22; fabricating statements about which they later testified at trial, *id*. at ¶ 24; being aware of Swain's mistreatment and the fact he had given a false statement, *id*. at ¶ 31; fabricating police reports implicating Johnson, *id*. at ¶ 50; persuading the prosecutors to bring false charges against Johnson, *id*. at ¶¶ 51-52; and testifying falsely at trial, *id*. at ¶¶ 53-54. Because Winstead and Las Cola are alleged to have played active and significant roles in

9

building a false case against Johnson and providing false information to the prosecutors to facilitate his prosecution, the malicious prosecution claim against them survives dismissal. *See Rosado*, 2019 WL 4450523, at *6.

## II. Johnson's Motion for Leave to Add a Due Process Evidence Fabrication Claim

Rule 15(a)(2) provides that "court[s] should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). That said, district courts "have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Right Field Rooftops, LLC v. Chi. Cubs Baseball Club, LLC*, 870 F.3d 682, 693 (7th Cir. 2017) (internal quotation marks omitted). A plaintiff ordinarily should be given at least one opportunity to amend, *see Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 941 (7th Cir. 2018), but is not entitled to additional opportunities if he failed to remedy defects apparent at the time of the prior amendment or made a considered choice not to include information or claims known to him at that time, *see Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 855 (7th Cir. 2017) (affirming the district court's denial of leave to amend to add an ADA claim where the plaintiff "could have alleged the ADA claim at the beginning of the suit" and "[t]he lengthy delay could not be justified by newly discovered information").

Johnson filed his complaint in August 2015, Doc. 1, and his first amended complaint in November 2015, Doc. 25. In moving at this juncture for leave to add a due process evidence fabrication claim, "Johnson acknowledges that a fabrication claim might have been included in the original Complaint or in the First Amended Complaint." Doc. 92 at 12. Indeed, in his oppositions to the pre-appeal motions to dismiss, Johnson sought leave to amend to add an evidence fabrication claim against *other* defendants, those with whom he later settled, Doc. 46 at 8-9 (citing *Whitlock v. Brueggemann*, 682 F.3d 567 (7th Cir. 2012), and *Fields v. Wharrie*, 740

10

F.3d 1107 (7th Cir. 2014), which recognized due process evidence fabrication claims), but *not* against the defendants still in the case, Doc. 45. Johnson nonetheless maintains that there has been no undue delay because the proposed amendment "is essentially a response to defenses [to the *Miranda* claim] which were first raised on appeal." Doc. 92 at 13. That argument makes no sense. By the time the appeal was heard, Defendants had already attacked Johnson's *Miranda* claim in the district court, putting him on notice that the claim was at risk of dismissal; indeed, the defendants who later settled had attacked the claims against them, and Johnson responded by seeking leave to amend to add an evidence fabrication claim against them. Johnson's incentive to bring an evidence fabrication claim against Defendants, and the knowledge necessary to bring such a claim, were as strong while the case was originally before the district court as when the case was on appeal.

It is beyond dispute that Johnson could have brought an evidence fabrication claim against Defendants in his original or amended complaint, or could have sought leave to add that claim in opposition to Defendants' earlier motion to dismiss the amended complaint. Johnson's delay, being wholly unjustified, is undue. Given the resources that the parties and two levels of the federal judiciary have invested in this case, that undue delay, standing alone, justifies denial of leave to amend. *See McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 687 (7th Cir. 2014) (affirming the district court's denial of leave to amend based on "undue delay alone" where the counter-plaintiff "should have known about" its proposed new counterclaims "when it asserted its original counterclaims," where "the parties had already invested significant resources in the case," and where the counter-plaintiff "presented no excuse for omitting" those new counterclaims); *King v. Cooke*, 26 F.3d 720, 723 (7th Cir. 1994) ("[T]he longer the delay, the greater the presumption against granting leave to amend … . [W]hen extreme, delay itself may

be considered prejudicial.") (internal quotation marks omitted, ellipses in original); *Tamari v. Bache & Co.*, 838 F.2d 904, 909 (7th Cir. 1988) ("The longer the delay in seeking leave to amend, the likelier is it both that the delay is inexcusable … and that granting leave to amend will, by further delaying the lawsuit, impair the public interest in the prompt resolution of legal disputes. The interests of justice go beyond the interests of the parties to the particular suit; all other considerations to one side, delay in resolving a suit may harm other litigants by making them wait longer in the court queue. Hence, when extreme, delay itself may be considered prejudicial, and [the district court] was entitled to conclude that this was such a case.") (internal quotations marks and citation omitted).

The analysis could end here, but the court adds for good measure that Johnson's delay has prejudiced Defendants and the judicial system. Allowing Johnson to add a new claim at this stage, following a hard-fought Rule 12(b)(6) round that took significant time and effort for the parties to litigate in the district court and on appeal, would prejudice Defendants by "forcing them to articulate [even more] reasons for dismissal, and, at the same time providing [him] with the opportunity to correct mistakes facially apparent since the first complaint after the defendants had shown their hand." *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 759 (7th Cir. 2002). Moreover, had Johnson included in his first amended complaint a viable evidence fabrication claim, or sought leave in his opposition to Defendants' pre-appeal Rule 12(b)(6) motion to add that claim against them, he might have saved Defendants and the Seventh Circuit the extensive time and effort they spent litigating and resolving the appeal. The prejudice that Johnson's delay imposed on Defendants and the judicial system provide additional support for denying him leave to add an evidence fabrication claim. *See Park v. City of Chicago*, 297 F.3d 606, 613 (7th Cir. 2002) (affirming the denial of leave to amend where granting leave "would

12

have burdened the district court"); *Perrian v. O'Grady*, 958 F.2d 192, 195 (7th Cir. 1992) (stating that long delays before seeking to amend a complaint can "burden … the judicial system" and "defeat the public's interest in speedy resolution of legal disputes," and thus could justify denial of leave to amend).

**Conclusion**

Johnson's motion for leave to amend is granted as to adding factual allegations pertinent the malicious prosecution claim and denied as to adding the due process evidence fabrication claim. Johnson shall file his proposed second amended complaint, without the evidence fabrication claims (Counts 3 and 4), as a separate docket entry. Defendants' motion to dismiss is denied. Defendants shall answer the second amended complaint by December 20, 2019.

December 4, 2019                   _____
                                        United States District Judge